# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| 1735 JERSEY AVE LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>LUXE LIVING DESIGN, LLC<br><br>        Defendant. | Document Electronically Filed<br><br>Civil Action No.: 3:24-cv-06175 (MAS) (TJB) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TENANT'S REQUEST FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**Clark Guldin**
Attorneys at Law
20 Church Street – Suite 15
Montclair, New Jersey 07042
973.707.5346
*Attorneys for Plaintiff*
*1735 Jersey Ave LLC*

Of Counsel and On the Brief:
    Jonathan A. Ozarow, Esq.

Plaintiff, 1735 Jersey Ave LLC ("Landlord"), respectfully submits this brief in opposition to the Order to Show Cause filed by Defendant, Luxe Living Design, LLC ("Tenant") seeking to restored to approximately One Hundred Ninety-Five Thousand Seven Hundred Eighty-Two (195,782) square feet (the "Premises") located at 1735 Jersey Avenue, North Brunswick, New Jersey (the "Building").[1]

## PRELIMINARY STATEMENT

Landlord and Tenant, are parties pursuant to a commercial lease agreement (the "Lease") whereby Tenant leased from Landlord (the "Premises"). Tenant failed to comply with its leasehold obligations, specifically its obligations to make payments due under the Lease and, as a result, Landlord commenced an action (the "L/T Complaint") in the Superior Court of New Jersey, Middlesex County, Special Civil Part, Landlord/Tenant Division ("L/T Court"), solely to recover possession of the Premises—the only relief that can be afforded by the L/T Court. Landlord's choice of venue was intentional and deliberate. N.J.S.A. § 2A:18-51, *et seq.* (the "Summary Dispossess Statute") affords landlords a quick remedy where, like here, a landlord is faced with a recalcitrant tenant. In an attempt for an end-run around

---

[1] For reasons that remain unclear, Tenant filed its instant application as though this were a consolidated matter with an action seeking unpaid rent arrears styled 1735 Jersey Ave LLC v. Luxe Living Design, LLC and Chaim S. Treitel, Docket No. 3:24-cv-6168. This application is only appropriate for the action pending under Docket No. 3:24-cb-06175, as that action is a summary dispossess action that Tenant improperly removed to this Court.

the Summary Dispossess Statute, Tenant has engaged in a number of dilatory tactics, chiefly removing this action to federal court despite no basis to do so. Tenant is now leveraging both this Court's unfamiliarity with the Summary Dispossess Statute, as well as foreseeable delays to try and frustrate Landlord to rewrite the Lease and/or otherwise avoid its obligations to Landlord. Landlord, having tired of Tenant's tactics, has exercised its negotiated-for rights to engage in self-help.

Tenant's application, while long on bombast, sits on weak legal footing. The standards to obtain the relief sought are well-settled and require, among other things, a likelihood of success on the merits. Tenant fails to make any such demonstration. In fact, Tenant's application lays bare that judgment of possession must be granted in favor of Landlord. Accordingly, Tenant's application must be denied as a matter of law.

## LEGAL ARGUMENT

### POINT I

### TENANT IS NOT ENTITLED TO ANY INJUNCTIVE RELIEF

**A.   The Legal Standard**

The legal standard the Court uses to evaluate the instant order to show cause is well-settled. An interlocutory injunction is an extraordinary equitable remedy that should only be entered upon a showing by clear and convincing evidence of entitlement to relief. Dolan v. DeCapua, 16 N.J. 599, 614 (1954) ("Injunctive

judgments are not granted in the absence of clear and convincing proof."). "The standards for issuing a preliminary injunction were clearly established by the Supreme Court in Crowe v. De Gioia." Paternoster v. Schuster, 296 N.J. Super. 544, 555 (App. Div. 1997) (citing Crowe v. De Gioia, 90 *N.J.* 126, 132–34 (1982)). When a trial court determines whether to grant a preliminary injunction it must consider: (1) whether an injunction is "necessary to prevent irreparable harm"; (2) whether "the legal right underlying [applicant's] claim is unsettled"; (3) whether the applicant has made "a preliminary showing of a reasonable probability of ultimate success on the merits"; and (4) "the relative hardship to the parties in granting or denying [injunctive] relief." Crowe, 90 *N.J.* at 132–34

### B. Tenant Cannot Demonstrate a Likelihood of Success on the Merits

In order to demonstrate a probability of success on the merits, the moving party must demonstrate a prima facie case showing of a "reasonable probability" that it will prevail on the merits and that material facts are not substantially in dispute. Crowe, 90 N.J. at 133; *see also* Anders v. Greenlands Corp., 31 N.J. Super. 329, 339 (Ch. Div. 1954) (refusing to issue an interlocutory restraint where, among other things, "[e]very material fact upon which plaintiffs rel[ied] [wa]s denied by defendants, fully and explicitly, under oath"); Sherman v. Sherman, 330 N.J. Super. 638, 644-45 (Ch. Div. 1999) ("Chief among the factors to be considered is the requirement that plaintiffs demonstrate a reasonable probability of success on the

merits. In other words, the movant must clearly and convincingly show that the material facts are not in dispute.")

A "lease is a contract between [the lessor and lessee] which sets forth their rights and obligations to each other in connection with [the lessor's] temporary grant of possession of its property to [the lessee]." Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 411 (2011). As such, leases are guided by contract principles. Ibid. The polestar of contract construction is to discover "the intention of the parties to the contract as revealed by the language used, taken as an entirety[.]" Conway v. 287 Corp. Ctr. Assoc., 187 N.J. 259, 269 (2006) (quotation omitted). Contract terms are "generally given their plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002). "'[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.'" Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citations omitted).

The court will not "supply terms to contracts that are plain and unambiguous," nor will it "make a better contract for either of the parties than the one which the parties themselves have created." Maglies v. Estate of Guy, 193 N.J. 108, 143 (2007). Under New Jersey law, freedom of contract "'is a factor of importance'" within "the framework of modern commercial life." Whalen v. Schoor, De Palma & Canger Grp., Inc., 305 N.J. Super. 501, 505-06 (App Div. 1997), quoting

Hennigan v. Bloomfield Motors, Inc., 32 N.J. 358, 386 (1960).  It is a "settled principle that parties negotiating at arm's-length may generally contract as they wish." Id. at 505, citing Marchak v. Claridge Commons, Inc., 134 N.J. 275, 281-82 (1993).

A "lease is a contract between [the lessor and lessee] which sets forth their rights and obligations to each other in connection with [the lessor's] temporary grant of possession of its property to [the lessee]." Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 411 (2011).  As such, leases are guided by contract principles. Ibid.  The polestar of contract construction is to discover "the intention of the parties to the contract as revealed by the language used, taken as an entirety[.]" Conway v. 287 Corp. Ctr. Assoc., 187 N.J. 259, 269 (2006) (quotation omitted). Contract terms are "generally given their plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002).  "'[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.'" Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citations omitted).

The court will not "supply terms to contracts that are plain and unambiguous," nor will it "make a better contract for either of the parties than the one which the parties themselves have created." Maglies v. Estate of Guy, 193 N.J. 108, 143 (2007).  Under New Jersey law, freedom of contract "'is a factor of importance'"

within "the framework of modern commercial life." Whalen v. Schoor, De Palma & Canger Grp., Inc., 305 N.J. Super. 501, 505-06 (App Div. 1997), quoting Hennigan v. Bloomfield Motors, Inc., 32 N.J. 358, 386 (1960). It is a "settled principle that parties negotiating at arm's-length may generally contract as they wish." Id. at 505, citing Marchak v. Claridge Commons, Inc., 134 N.J. 275, 281-82 (1993).

By way of brief background, Article 2.03 provides that either party can select a "Commencement Date" within thirty days of December 1, 2023 by providing a written notice to the other party. (ECF 11-2, at ¶ 2.03.) By email, dated December 4, 2023, Landlord advised Tenant and its outside counsel that Landlord selected December 15, 2023, to which Tenant's counsel advised was "acceptable".) (ECF 11-3.) Tenant took possession of the Premises on December 15, 2023. (ECF 5-2, at ¶ 2.)

Since taking possession of the space, Tenant failed to comply with its obligations to remit all rent due under the Lease and, as a result, Landlord commenced a summary dispossess proceeding on May 1, 2024. (ECF 5-7.) For the last four months, the parties, with the aid of Magistrate Judge Bongiovanni, have engaged in settlement discussions, but have not reached any agreement.[2] With any

---

[2] Landlord is being deliberately opaque as to nature of discussions.

discussion being futile, Landlord elected to avail itself of its right to engage in self-help, which it negotiated for in the Lease. (ECF11-3, at ¶ 18.03(b).)

As an initial matter, Tenant's argument that Landlord is barred from engaging in self-help is contrary to the express provision of the Lease, which provides that "[n]o right or remedy available to Landlord hereunder or at law or in equity is intended to exclusive of any other right or remedy provided herein or by law, <u>but each shall be cumulative and in addition to every other right or remedy given</u> herein or now or hereafter existing at law or in equity or by statute. (<u>Id</u>., at ¶ 18.03(e). Emphasis supplied.) Again, and without divulging the substance of any settlement discussions, Tenant is not adhering to its obligations and Landlord is not willing to allow Tenant to remain in the Premises rent-free for an indefinite amount of time.

Tenant's application fails to consider the summary nature of this proceeding, as well as the limited issues that should be placed before the Court. Where, like here, the nonpayment of rent is the basis upon which the landlord seeks possession, it is essential that the landlord establish this default. <u>Acad. Spires, Inc. v. Jones</u>, 108 <u>N.J. Super.</u> 395, 401–02 (Law. Div. 1970). If the landlord is correct in the assertion of the fact of nonpayment but is in error in his claim of the amount owed, determination of the extent of default is essential as a prelude to judgment for possession. <u>Ibid</u>. This is for no other reason than that the tenant is entitled to know the sum he must pay to deprive the court of jurisdiction and to put an end to the

proceeding. Ibid. Failure to pay additional rent is a basis to evict where "there is a lease provision which states that such fees are collectable as rent." Hodges v. Feinstein, Raiss, Kelin & Booker, LLC, 383 N.J. Super. 596, (App. Div. 2006), aff'd and remanded sub nom. Hodges v. Sasil Corp., 189 N.J. 210 (2007).

Moreover, in a summary dispossess action, a trial court cannot rewrite a parties' lease. Chau v. Cardillo, 250 N.J. Super. 378 (App. Div. 1990) ("The equitable jurisdiction of the Special Civil Part in a summary dispossess action is limited to matters of defense or avoidance asserted by the tenant".) "The essence of a tenancy action is the speedy restoration of his property to the landlord, and we cannot infer any right in the trial court to withhold the premises from the landlord on any theory of hardship to the tenant unless there is a statutory basis therefor." Charlie Collins Chevrolet v. Zebrowski, 130 N.J. Super. 116, 118 (App. Div. 1974) (citations omitted and emphasis supplied). Where, like here, a tenant is seeking a rent abatement, that tenant is required to deposit with the Court all sums due and owing under pain of having that defense struck and judgment entered in favor of a landlord. Daoud v. Mohammad, 402 N.J. Super. 57, 59 (App. Div. 2008) ("A tenant may raise lack of habitability claims in such proceedings, however, and obtain a

Marini hearing,[3] provided the tenant deposits the rent with the Clerk of the Court. In this case, defendant requested such a hearing but did not deposit the rent as required. Accordingly, the trial court entered a judgment for possession.") (internal citations omitted).

With this legal authority as a backdrop, the frivolity of Tenant's application is laid bare. There is no dispute that the operative document here is the Lease. Tenant is obligated to make full payment of "Base Rent" and Additional Rent on or before the first day of each month "without notice, demand, deduction, or setoff". (ECF 11-3, at ¶¶ 3.02(b), 4.03.) Any payment not made timely would be subject to certain defined late fees and interest charges. (Id., at ¶ 3.03.) The Lease afforded Tenant two months of free Base Rent, which Tenant would forfeit if, at any time during the Lease term there was an Event of Default. (Id., at 2.01.) Tenant was required to make a second security deposit "no later than two (2) months after the Commencement Date, time being of the essence and no default *de minimis*…The failure to timely deliver the Additional Security Deposit shall constitute an uncurable default..." (Id., at ¶ 6.01.)

---

[3] A Marini hearing derives its name from the seminal case of Marini v. Ireland, 56 N.J. 130 (1970), where, like here, a tenant was claiming a right to a rent abatement due to conditions of its premises, with the New Jersey Supreme Court expressly holding that any defense is conditioned on a tenant "deposit[ing] the full amount of unpaid rent in order to protect the landlord if he prevails". Id., at 147. The holding of Marini was extended to commercial tenancy disputes. Demirci v. Burns, 124 N.J. Super. 274, 276 (App. Div. 1973).

As of today, Tenant is indebted to Landlord for $2,112,541.41, exclusive of attorneys' fees.[4] (*See* Declaration of Jack Saadia (the "Saadia Decl.", Ex. A.) Tenant's "defense" to this amount being due is that the roof over the Premises entitles Tenant to an abatement.[5] (ECF 17-1, p. 3.) To date, Tenant has not posted any amounts with the Court as it is required to as a matter of law. Accordingly, Tenant's defense cannot be considered. Put simply, even if Tenant was entitled to an abatement, that defense is unavailable to the Tenant due to Tenant's failure to post the full amount of the outstanding rent due. And, because Landlord is entitled, as a matter of law, to a judgment of possession, Tenant cannot demonstrate any likelihood of success on the merits and its application must be denied.

   C.   **The Balance of the Equities**

In balancing the equities, the court will consider "the relative hardship to the parties in granting or denying relief." Crowe, 90 N.J. at 134. The court may balance the benefit of the requested relief to the requesting party against the expense or inconvenience that the opposing party would bear were the relief to be granted;

---

[4] The Lease provides for an award of attorneys' fees to a prevailing party under certain circumstances. (ECF 11-2, at ¶ 26.18.)

[5] The Lease provides that Tenant is "responsible for repair of the portion of the Building's roof over the Premises commencing on the ninth (9th) month after the Commencement Date." (ECF 11-2, at ¶ 11.01.) Tenant admits the Commencement Date was December 15, 2023, so Tenant has been responsible for this repair as of August 15, 2024.

additionally, the court may consider the nature and extent of the harm that could result in the event the requested relief were denied.  Ibid.

While Tenant does not even bother trying to show the equities are in its favor, because it cannot make any such showing.  As explained *supra*, Tenant is in default of its leasehold obligations by failing to remit all rent and additional rent under the Lease.  Moreover, it committed an uncurable default by failing to post its full security deposit, which entitles Landlord to "immediately exercise any and all remedies consistent with an Event of Default".  In an attempt to avoid the summary nature of this proceeding, Tenant removed the L/T Complaint to this Court engendering needless delay.  Landlord is being denied its statutory right to an expeditious resolution, with Tenant leveraging this delay to place Landlord in a state of economic duress.

Tenant also comes to this Court with unclean hands and is lying to the Court to get the relief it seeks.  Here, Tenant's principal Chaim S. Treitel certifies, under penalties of perjury, that Tenant has remitted $1.3 million in rent.  (ECF 17-2, at ¶ 10.)  As demonstrated on the rent ledger, Tenant has only paid $857,497.54 for rent payments to date.  (*See* Saadia Decl., Ex. A.)  I also remind that Court that Tenant's counsel has a history of lack of candor to the Court, which resulted in a New Jersey State Court denying him *pro hac vice* and holding him in contempt.  (ECF 5-9.)  In that action, as well as here, Mr. Twersky took it upon himself to lie to the Court to

-11-

engender delays. Given the foregoing, the Court should take any conclusory statement that lacks corroboration with a grain of salt.

## CONCLUSION

For all the foregoing reasons, Landlord respectfully requests the Court grant the relief sought herein in the entirety.

                                          Respectfully submitted,
                                          **CLARK GULDIN**
                                          *Attorneys for Plaintiff*
                                          *1735 Jersey Ave LLC*

                                        By: ___/s *Jonathan A. Ozarow*___
                                              Jonathan A. Ozarow, Esq.

Dated: September 27, 2024