**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| 1735 JERSEY AVE LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>LUXE LIVING DESIGN, LLC<br><br>    Defendant. | Document Electronically Filed<br><br>Civil Action No.: 3:24-cv-06175 (MAS) (JTQ) |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO TENANT'S REQUEST FOR A PRELIMINARY INJUNCTION**

                **Clark Guldin**
                Attorneys at Law
                20 Church Street – Suite 15
                Montclair, New Jersey 07042
                973.707.5346
                *Attorneys for Plaintiff*
                *1735 Jersey Ave LLC*

Of Counsel and On the Brief:
  Jonathan A. Ozarow, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

POINT I   TENANT IS IN MATERIAL BREACH OF THE LEASE AND OTHERWISE COMES TO THE COURT WITH UNCLEAN HANDS ................................................................................. 3

    A.   The Applicable Legal Standard. .................................................... 3

    B.   Tenant Cannot Demonstrate a Likelihood of Success on the Merits ........................................................................................ 4

    C.   The Balance of the Equities Favors Landlord ............................ 8

    D.   Any Injunction Entered Must Be Conditioned Upon an Increased Bond ............................................................................. 9

CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**PAGES**

**CASES**

Gray v. Chamoro, 2022 WL 853375 (N.J. Super. Ct. App. Div. Mar. 23, 2022) ...................................................................................................................10

Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186 (3d Cir. 1990).......................3

JS Properties, L.L.C. v. Brown & Filson, Inc., 389 N.J. Super. 542 (App. Div. 2006) .............................................................................................................6

Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508 (D.N.J. 1999)...................10

Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)..........................................................3

Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969) ...................................................5

Weiss v. I. Zapinsky, Inc., 65 N.J. Super. 351 (App. Div. 1961)..............................5

Plaintiff, 1735 Jersey Ave LLC ("Landlord"),[1] respectfully submits this supplemental brief in opposition to Tenant's Order to Show Cause).

## **PRELIMINARY STATEMENT**

Tenant's recent actions should give the Court pause as to whether any restraints should be continued and, if so, the amount of security should be posted. As this Court is aware, Tenant successfully obtained temporary restraints enjoining Landlord from exercising rights that Landlord negotiated for under the Lease. Since that time, Landlord discovered that Tenant is material breach of its obligations to maintain insurance under the Lease. Moreover, Tenant failed to comply with multiple Court orders, and otherwise acted in bad faith. While this Court has acted as a bulwark against Tenant's egregious actions, it should not be necessary. While Tenant and its counsel continue to lack self-control and or a willingness to regulate their worst impulses, Landlord has taken the opposite approach. To wit, Landlord, at great cost and expense, began undertaking replacing the Building's roof, which Tenant avers is the reason Tenant will not comply with its payment obligations under the Lease.

Rather than appreciate Landlord's efforts, Tenan has dug in and acted in ways that defy logic. Among other things, Tenant now indicates that it intends to vacate

---

[1] All terms not otherwise defined herein shall have the same meaning ascribed as in Landlord's underlying opposition brief.

the Premises. To the extent this is not meant to be an idle threat, it stresses the need for a substantially larger bond to be in place. Among other things, Tenant all but declares its intent to breach the Lease at an uncertain time in the future once Tenant locates alternative space in a manner that will cause Landlord to incur substantial damages. Moreover, Landlord is unable to mitigate these future damages now because it is not known if/when Tenant shall vacate the Premises.

Tenant should not be permitted to utilize restraints as both a shield and a sword. Indeed, the purpose of Tenant's threat is obvious—Tenant wishes to use the specter of vacant premises and lack of rental income to place Landlord in a state of economic duress and obtain leverage in this action. The fact that Tenant's threat arose immediately after Landlord signed a roofing contract at Tenant's demand all but confirms that Tenant comes to this Court with unclean hands. Accordingly, for the reasons set forth herein, as well as those set forth in Landlord's initial opposition papers, the Court should dissolve the restraints and/or modify the bond to an appropriate amount.

# LEGAL ARGUMENT

## POINT I

### TENANT IS IN MATERIAL BREACH OF THE LEASE AND OTHERWISE COMES TO THE COURT WITH UNCLEAN HANDS

#### A. The Applicable Legal Standard

"To obtain a preliminary injunction, the moving party must demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted". Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987). It is reversible error to issue a preliminary injunction where either factor is absent. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990) ("We cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.")

The only claim by either party constituting irreparable harm is Landlord's claim for possession of the Premises. As this Court is aware, Landlord initially commenced a summary proceeding before the L/T Court before Tenant improvidently removed the summary proceeding to this Court. Thus, to obtain a preliminary injunction, Tenant must demonstrate a likelihood of success on the merits, which it cannot do.

Case 3:24-cv-06175-MAS-JTQ   Document 42   Filed 11/13/24   Page 7 of 14 PageID: 444

### A. Tenant Cannot Demonstrate a Likelihood of Success on the Merits

In its initial papers, Landlord detailed that (i) Tenant committed an uncurable default by failing to post the required security deposit in a timely manner; (ECF 19, p. 10) and (ii) Tenant's "defense" to non-payment would be stricken (*id.*, p. 10.) Since that time, Landlord learned that Tenant materially breached other Lease provisions, while is intending on otherwise breaching the Lease.

The Lease mandates that Tenant procure (i) general liability insurance "in an amount not less than Five Million 00/100 Dollars ($5,000,000) per occurrence with excess umbrella liability insurance in the amount of Two Million 00/1000 Dollars ($2,000,000); (ECF 11-3, at ¶ 15.02); (ii) "insurance coverage for full replacement cost on all of Tenant's Personal Property…in, on, or about the Premises….with a deductible not to exceed Ten Thousand Dollars ($10,000) per occurrence)"; (*id.*, at ¶ 15.03(b)); and (iii) "rental value insurance covering Rent for a period of one year, with loss payable to Landlord" (*id.*, at ¶ 15.04.)  The Lease further mandates that Tenant provide Landlord with copies of policies of its insurance or certificates. (*Id.*, at ¶ 15.05.)  Tenant failed to provide proof of the requisite insurance or confirm that it possessed such insurance compelling Landlord to serve Tenant with a notice of default. (*See* accompanying declaration of Jonathan A. Ozarow, Esq. (the "Ozarow Decl."), Ex. A.)  Tenant subsequently disclosed, inadvertently, that Tenant did not

procure the insurance and was otherwise in breach of its Lease obligations.[2]  (*Id.*, Ex. B; ¶ 3.)

Additionally, Landlord learned that Tenant intends to breach the Lease and abandon the Premises as soon as it can find alternative space.  (*See* accompanying declaration of Jack Saadia (the "Saadia Decl."), ¶ 10.)  As of the date of filing, there are more than six years remaining on the Lease.  (ECF 11-3, at ¶ 2.01.)  The Lease does not offer Tenant any right to terminate the Lease.  Nor is this relief sought in any of Tenant's pleadings.  At best, Tenant's argument for abandoning the Premises is due to purported issues with the roof, which is mooted, or will be mooted in short order.  (*See* Saadia Decl., Ex. A; ¶ 4.)

As an initial matter, any claim for constructive eviction, which is what Tenant will likely argue, is tenuous at best.  "The general rule is…that a tenant's right to claim a constructive eviction will be lost if he does not vacate the premises within a reasonable time after the right comes into existence."  Reste Realty Corp. v. Cooper, 53 N.J. 444, 461 (1969).  The New Jersey Appellate Division further opined that, even if a tenant has a valid constructive eviction claim, that claim is lost if any defects are cured by the landlord before the tenant vacates.  Weiss v. I. Zapinsky, Inc., 65 N.J. Super. 351, 357–58 (App. Div. 1961) ("Although defendant might have

---

[2] Tenant will be required to renew its insurance in December 2024.  While not yet ripe, this may require further intervention.

successfully maintained its defense of constructive eviction had it abandoned the premises at the time its goods were damaged by water, it waived the defense by continuing in possession after November 18, 1957, the date of the last damage suffered. We observe, again, that plaintiff had tried to correct the condition by having Sears, Roebuck & Co. install a new roof, which carried a five-year guarantee; that defendant made no claim for damage after this work was completed on November 20, 1957"). In a similar vein, where, like here, a tenant engages in litigation rather than vacates the premises, it waives any claim for constructive eviction. JS Properties, L.L.C. v. Brown & Filson, Inc., 389 N.J. Super. 542, 551 (App. Div. 2006) ("Rather than depart, the tenant remained in the premises, fought back and, indeed, guaranteed that the litigation would not be rapidly or summarily resolved by successfully obtaining the action's transfer to the Law Division. Following transfer, the tenant filed an answer and counterclaim, and the parties engaged in discovery. It was not until March 31, 2001 that the tenant removed itself from the premises, over six months after the filing of the landlord's complaint").

 Here, Tenant unnecessarily delayed Landlord's summary dispossess action, which was scheduled for trial over five months ago, by improvidently removing this action to the Court. Tenant's subsequent actions further drew out this summary proceeding. Even assuming, *arguendo*, Tenant had a valid constructive eviction claim, that claim is lost due to Tenant's subsequent actions. Moreover, as the

-6-

purported issue causing the constructive eviction is in process of being remediated (and will be remediated before Tenant vacates), Tenant is foreclosed from claiming a constructive eviction. Under any calculus, Tenant has no valid defense to its non-payment of rent.

More pertinently, Tenant is seeking to use a preliminary injunction in an improper manner. On one hand, Tenant demands the Court enjoin Landlord from recapturing the Premises in accordance with its bargained-for rights under the Lease. On the other hand, Tenant seeks to abandon the Premises at an uncertain time so long as Tenant will not be damaged. This leaves Landlord in a precarious position as it is unable to start looking for an alternative tenant or other way to mitigate its damages as Landlord does not know if or when the Premises will become available. Indeed, Landlord will incur substantial damages if a preliminary injunction is granted given Tenant's intentions. This cannot be countenanced.

At bottom, Tenant cannot demonstrate any likelihood of success on the merits. Moreover, Tenant is not interested in prevailing in this action, and further is taking actions that will exacerbate Landlord's damages. This is even more offensive as Landlord has now commenced replacing the Building's roof at great expense at Tenant's prodding, at least in part. In all events, as Tenant cannot show a likelihood of success on the merits (and is uninterested in prevailing in this action), a preliminary injunction should not be issued.

### B.     The Balance of the Equities Favors Landlord

Tenant's actions, or lack thereof, since obtaining temporary restraints warrant consideration. By Order, dated October 11, 2024, Tenant was ordered to post a bond in the amount of $350,000 by October 16, 2024. (ECF 27.) Tenant failed to post the bond as ordered by the Court,[3] and was provided a one-week extension by the Court. (ECF 29.) Tenant, again, failed to post a bond timely before filing another request for an extension, which was denied, though the Court afforded Tenant an additional week to post a bond with the caveat that no further extensions will be granted. (ECF 32.) Tenant failed, again, to comply with the Court's Order and filed a request for an extension after 7:00 pm the day a bond was due. (ECF 33.) This request was rejected yet again, with the Court noting that " (a) this is an issue that Defendants should have addressed and resolved long ago and (b) Defendants waited until the very same day the bond was to be posted to file its request". (ECF 35.) Ultimately, Tenant posted the bond on October 31, 2024—more than two weeks after it was initially ordered to do so.

In a similar vein, this Court ordered Tenant to make ongoing rent and directed the parties to immediately meet and confer as to an appropriate amount that would

---

[3] Tenant advised that delays could be attributed, in part, due to Yom Kippur. (ECF 28.) Yom Kippur began at sundown on Friday, October 11, 2024, and ended at sundown on Saturday, October 12, 2024. It strains credulity that Tenant was hampered in any way due to an inability to work during this holiday, or that this delayed Tenant from being able to obtain a bond for weeks on end.

be paid on an ongoing basis. (ECF 31.) Tenant effectively refused to have any discussion in good faith and advised that it would only agree to pay $165,000 on an ongoing basis, to be paid on the 15th of each month.[4] (ECF 39.) The Court was forced to make a determination that "the Parties should have resolved on their own" and ordered ongoing rent of $224,000 to be paid on an ongoing basis. (ECF 40.) Tenant has not complied with this Order. (*See* Saadia Decl., ¶7.)

Tenant's failure to comply with multiple Court Orders is both intentional and inexcusable. Indeed, the only logical inference is that Tenant would rather force Landlord and this Court to expend additional time and resources to repeatedly address issues to obtain further delay. The Court's Orders are not suggestive, and Tenant's repeated failure to comply, coupled with Tenant's weak excuses, demonstrate a lack of respect for Landlord and this Court. Accordingly and in addition to the reasons provided above and in Landlord's initial opposition, a preliminary injunction should be denied as the equities favor Landlord.

### C. Any Injunction Entered Must Be Conditioned Upon an Increased Bond

In the Third Circuit, "the applicant for the injunction usually must give security in such sum as the court deems proper, for the payment of such costs and

---

[4] Should the Court believe it is warranted, Landlord is prepared to provide the Court with the correspondence between the parties on this issue, though it was mooted by the Court's November 7, 2024 Order.

damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained". Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 534 (D.N.J. 1999), *quoting* Fed. R. Civ. Pro., 65(c) and Elliott v. Kiesewetter, 98 F.3d 47, 59-60 (3d Cir., 1996). Where "a party breaches a contractual obligation to procure insurance coverage, the measure of damages is "the amount that would have been due under the policy provided it had been obtained." Gray v. Chamoro, , 2022 WL 853375, at *6 (N.J. Super. Ct. App. Div. Mar. 23, 2022) (citations and quotations omitted).

Given recent developments and disclosures, the current bond in place for $350,000 is insufficient. Tenant has not procured insurance required under the Lease terms. This deficiency needs to be addressed in the form of a bond. Additionally, Tenant has made clear its intention that it will be vacating the Premises as soon as it is practicable. By taking this course of action, Tenant guarantees that Landlord will be damaged in the form of unpaid rent and is unable to mitigate these damages until an unknown time. Considering the foregoing, the bond should also be increased to cover damages that will be sustained and cannot be mitigated until it is known when Tenant intends to leave.

## CONCLUSION

For all the foregoing reasons, Landlord respectfully requests the Court deny Tenant's request for a preliminary injunction or, in the alternative, order a bond sufficient to protect Landlord.

                                        Respectfully submitted,
                                        **CLARK GULDIN**
                                        *Attorneys for Plaintiff*
                                        *1735 Jersey Ave LLC*

                                        By:   /s *Jonathan A. Ozarow*
                                                  Jonathan A. Ozarow, Esq.

Dated: November 13, 2024