# EXHIBIT C

Aaron Twersky, Esq.
Ilana Neufeld, Esq.
**Twersky PLLC**
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
atwersky@twerskylaw.com
ineufeld@twerskylaw.com

-and-

Avram E. Frisch, Esq.
**The Law Office of Avram E. Frisch LLC**
1 University Plaza, Suite 119
Hackensack, New Jersey 07601
(201) 289-5352
frischa@avifrischlaw.com

*Attorney for Defendants/Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-------------------------------------------------------------------------------x

1735 JERSEY AVE LLC and PPREF/TP NORTH
BRUNSWICK INDUSTRIAL LLC, as assignee of
1735 JERSEY AVE LLC,

                    Plaintiffs/Counterclaim Defendants,

            -against-                            Docket No.:
                                                    3:24-cv-06168

LUXE LIVING DESIGN, LLC
and CHAIM S. TREITEL,

                    Defendants/Counterclaim Plaintiffs.

-------------------------------------------------------------------------------x

**DEFENDANTS' SUPPLEMENTAL OBJECTIONS & RESPONSES TO**
**PLAINTIFF PPREF/TP NORTH BRUNSWICK INDUSTRIAL LLC,**
**AS ASSIGNEE OF 1735 JERSEY AVE LLC'S**
**FIRST REQUEST FOR INTERROGATORIES**

      Defendants Luxe Living Design, LLC and Chaim S. Treitel ("Defendants"), by and

through their counsel of record, hereby object and respond to Plaintiff PPREF/TP North

1

Brunswick Industrial LLC, as assignee of 1735 Jersey Ave LLC's ("Plaintiff") First Request For Interrogatories, dated September 22, 2025 ("Interrogatories"), as follows:

## **GENERAL OBJECTIONS**

The following general answers and objections are incorporated into each specific answer made below as if set forth therein:

1.  Defendants' answers to the Interrogatories herein do not constitute an admission that the documents or information disclosed are relevant or admissible in this case, and Defendants expressly reserves all objections it may have as to the admissibility, competency, relevancy, privilege, or propriety of the documents or information sought in the Interrogatories.

2.  Defendants are conducting a reasonable search for documents and information responsive to the Interrogatories that may be relevant to the issues raised in this lawsuit.

3.  Defendants' answers and responses to the Interrogatories herein are based on documents and information presently known to Defendants' and their attorneys.  Defendants' reserve the right to supplement or amend these answers, to make additions, deletions, or substitutions, based on new or additional documents and information, at any time prior to trial.

4.  Defendants' answers to the Interrogatories herein should be read in conjunction with, and shall be deemed supplemented by, responsive information set forth in documents produced by Defendants and deposition testimony given by Defendants' witnesses in this case.

5.  Defendants object to the Interrogatories herein to the extent they request documents or information that are protected from disclosure by the attorney-client privilege, the

2

attorney work-product doctrine, the deliberative process and self-critical analysis privileges, the law enforcement privilege, and/or any other applicable privilege or protection, and Defendants will not disclose such documents or information.  Inadvertent production of any document or information that is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery shall not constitute a waiver of any such privilege or protection, and such document or information shall be returned to the undersigned attorney along with any copies made thereof, immediately upon discovery by either party.

6. Defendants object to these Interrogatories to the extent they purport to impose requirements that exceed the proper purpose and scope of discovery as set forth in the Federal Rules of Civil Procedure.

7. Defendants object to these Interrogatories to the extent they are vague, ambiguous, confusing, overly broad, unduly burdensome, unreasonably cumulative or duplicative, argumentative, asserted in bad faith or for an improper purpose, assume facts that are inaccurate or lack foundation in the record, mischaracterize Defendants' position, seek the production of documents or information that are neither relevant to a claim or defense nor reasonably calculated to lead to the discovery of admissible evidence, and/or require Defendants to provide an opinion of law or about the application of law to fact.

8. Defendants object to each of these Interrogatories on the ground that they do not identify the item or category of items sought with reasonable particularity.

9. Defendants object to each of these Interrogatories to the extent that they seek documents that are not material and necessary in the prosecution or defense of this action.

10. Defendants object to each of these Interrogatories to the extent that they are vague,

ambiguous and/or unclear.

11. Defendants object to each of these Interrogatories to the extent that they are overly broad, burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the party's resources and the importance of issues at stake in the litigation.

12. Defendants object to each of these Interrogatories to the extent that they seek documents that contain information that is recognized as confidential by law and/or would be deemed an unwarranted invasion of Defendants' privacy or the privacy of third parties.

13. Defendants object to each of these Interrogatories to the extent that they assume facts not yet proven.

14. These General Objections apply to and form a part of the answer to each and every specific Interrogatories Interrogatory set forth below.  The answer or response to an individual Interrogatories is not a waiver of these General Objections.

## SPECIFIC OBJECTIONS & ANSWERS TO
## PLAINTIFFS' FIRST REQUEST FOR INTERROGATORIES

Subject to and without waiving any of the foregoing general objections, Defendants objects and respond to Plaintiffs' First Request for Interrogatories as follows:

**INTERROGATORY NO. 1:**

Describe in detail the relationship between ES Signature and Luxe Living, any contracts between them and identify their members, managers and employees from 2022 to the present and set forth the date of each entity's formation.

**ANSWER:**

Defendants object to this Interrogatory to the extent that it is vague, ambiguous, confusing, overly broad, unduly burdensome, irrelevant and not reasonably calculated to

4

lead to the discovery of admissible evidence.  Nevertheless, subject to and without waiving the General Objections set forth above, ES Signature and Luxe Living share common ownership.  There are no contracts between them.  ES Signature was formed on or about November 13, 2008 and its member is Chaim Treitel.  Luxe Living was formed on or about November 20, 2012 and its members are Chaim Treitel and Chaya R. Treitel.

**INTERROGATORY NO. 2:**

Identify each and every date that inventory, equipment and/or other property was moved and/or transported from the Brooklyn Warehouse to the New Jersey Warehouse and for each such date so identified, identify the inventory, equipment and/or other property that was moved and/or transported and the location where it was transferred.

**ANSWER:**

Defendants object to this Interrogatory to the extent that it is vague, ambiguous, confusing, overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Nevertheless, subject to and without waiving the General Objections set forth above, equipment and/or other property was moved and/or transported from the Brooklyn Warehouse to the New Jersey Warehouse beginning on or about December 15, 2023 and ending on or about early June 2024.

**INTERROGATORY NO. 3:**

State whether, from October 1, 2023 to the present, defendant and/or ES Signature, employed software and/or some other technology or system for tracking the movement and/or location of inventory, equipment or other property used in their business. If your answer is in the affirmative, identify the name of the software, technology or other system.

**ANSWER:**

Defendants object to this Interrogatory to the extent that it is vague, ambiguous, confusing, overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, subject to and without waiving the General Objections set forth above, Luxe Living and/or ES Signature does not employ software and/or some other technology or system for tracking the movement and/or location of inventory, equipment or other property used in their business. Defendant relies on a master inventory list.

**INTERROGATORY NO. 4:**

Describe the method by which Luxe Living tracks the movement and/or location of its inventory, equipment and/or other property that it rents to its customers and identify the reports used to track such inventory, equipment and/or other property.

**ANSWER:**

Defendants object to this Interrogatory to the extent that it is vague, ambiguous, confusing, overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, subject to and without waiving the General Objections set forth above, Luxe Living and/or ES Signature does not employ software and/or some other technology or system for tracking the movement and/or location of inventory, equipment or other property used in their business. Defendant relies on a master inventory list.

**INTERROGATORY NO. 5:**

Itemize all damages that you claim you sustained and/or that you are seeking to recover.

6

**ANSWER:**

*See* spreadsheets already produced.

**INTERROGATORY NO. 6:**

Identify each and every truck and/or van that Luxe Living leased and/or used in its business, by day between December 15, 2023 and December 15, 2024 and itemize the payments for truck rentals during that same time period.

**ANSWER:**

Defendants object to this Interrogatory to the extent that it is vague, ambiguous, confusing, overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, subject to and without waiving the General Objections set forth above, documents responsive to this request have been produced.

**INTERROGATORY NO. 7:**

Describe in detail and itemize by date each and every breach of the Lease by the Landlord.

**ANSWER:**

Subject to and without waiving the General Objections set forth above, Landlord breached the Lease by failing to repair the roof of the Premises prior to the commencement of the Lease, failing to deliver a space that was free of leaks in the roof and failing to maintain a dry space for Defendant to move into. This took place prior to when Defendant began to move into the Premises, which was on December 15, 2023. Landlord further breached the Lease by failing to repair the roof once notified that the roof was still leaking.

**INTERROGATORY NO. 8:**

Identify each and every misrepresentation that you contend was made by the Landlord and for each such misrepresentation, set forth its date, and the maker and recipient of the representation.

**ANSWER:**

Defendants object to this Interrogatory to the extent that it is vague, ambiguous, confusing, overly broad and unduly burdensome.  Nevertheless, subject to and without waiving the General Objections set forth above, Landlord made countless misrepresentation to Tenant, in many direct communications via text and WhatsApp, as well as verbally.  Landlord repeatedly misrepresented to Tenant that the roof would be replaced prior to Tenant taking possession of the warehouse, and continued to misrepresent to Tenant that it would be repaired while Luxe began to move into the warehouse.  Dates and times of these countless misrepresentations, which began in approximately December 2023 and continued throughout 2024, have been produced in Defendant's discovery responses.

**INTERROGATORY NO. 9:**

With respect to Section 2.01 of the Lease where it requires "Tenant shall inspect and approve of the Premises prior to the Commence Date", set forth who performed the inspection, when it was performed, describe any communications pertaining to the inspection, set forth the results of the inspection and who they were communicated to.

**ANSWER:**

Chaim Treitel and Sherzod Turdiev performed the inspections of the warehouse on behalf of Tenant, in the summer of 2023, September 2023 and December 2023, when Tenant began to move into the warehouse.  The inspections always showed that there were leaks

8

in the roof and that the roof was in need of repair, which was communicated to Landlord.

Landlord continuously promised Tenant that the roof repairs and/or replacement would

be completed before Tenant moved into the warehouse.

**INTERROGATORY NO. 10:**

Identify any discounts that were provided to Luxe Living's customers as the result of its alleged

lockout from the New Jersey Warehouse and for each such customer identify the date the

original invoice was provided to the customer and the date that any credit memo or subsequent

reduced invoice was provided to the customer.

**ANSWER:**

Defendants object to this Interrogatory to the extent that it is vague, ambiguous,

confusing, overly broad, unduly burdensome, irrelevant and not reasonably calculated to

lead to the discovery of admissible evidence.  Nevertheless, subject to and without

waiving the General Objections set forth above, documents responsive to this request

have been produced.  The documents show the original invoice date and a discount

and/or credit to the customer, which was inputted to the invoice after the lockout, which

was kept on the customer's account for future orders.  Plaintiff may also ask this question

at a deposition in this matter.

**INTERROGATORY NO. 11:**

If Luxe Living claims that it sustained increased overhead as a result of the alleged lockout,

describe with specificity how it made such calculations of increased overhead.

**ANSWER:**

Due to the lockout, Luxe Living sustained increased overhead related to additional

warehouse space for storage of furniture and other items and increased truck rentals for

9

delivery of furniture and other items.  Additionally, Luxe's payments for workers increased.  Usually, 35% of Luxe's weekly gross revenue goes to pay workers.  However, during the week of the lockout, approximately 45% of Luxe's weekly gross revenue went to pay workers, due to increased staffing for extra hours worked including overnight hours.

**INTERROGATORY NO. 12:**

Set forth the date that Luxe Living completely moved into the New Jersey Warehouse.

**ANSWER:**

Luxe Living completely moved into the New Jersey Warehouse on or about early June 2024.

**INTERROGATORY NO. 13:**

Set forth each day that Luxe Living contends that the roof leaked during its tenancy and/or partial occupancy of the New Jersey Warehouse.

**ANSWER:**

The roof leaked every day until it was replaced in or about January 2025.

Dated: New York, New York
       December 5, 2025

**TWERSKY PLLC**

By: _____
Aaron Twersky, Esq.
Ilana Neufeld, Esq.
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
atwersky@twerskylaw.com
ineufeld@twerskylaw.com

*Attorneys for Defendants*
*Luxe Living Design, LLC*

10

*and Chaim S. Treitel*

**CERTIFICATION**

      I certify that the foregoing answers to Plaintiff PPREF/ TP North Brunswick Industrial LLC, as Assignee of 1735 Jersey Ave LLC's First Request for Interrogatories and First Request for the Production of Documents are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**Dated:** 12/05/2025

**By:** *chaim treitel*

      Chaim S. Treitel, individually and on behalf of Luxe Living Design, LLC